IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-3245-CNS-NRN

MICKEY WALKER,
Plaintiff,

v.

HALEY BOURDON, in her individual capacity,
CITY OF LAKEWOOD, COLORADO.
Defendants.
_____
**DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT (DOC. 51, filed August 19, 2025) PURSUANT TO Fed. R. Civ. P. 12(b)(6)[1]**
_____

## INTRODUCTION

Plaintiff Mickey Walker alleges in his Third Amended Complaint that on November 19, 2022, he "suffered a severe hemorrhagic stroke" [Doc. 51, p. 1 and ¶¶ 20-31] Plaintiff admits to having used alcohol, marijuana, and methamphetamine earlier that same evening, first alone and again later with a friend while a visitor at the friend's residence. [*Id*. at ¶¶ 13-18] When Plaintiff began to exhibit physical impairments – including limb immobility, slowed speech, loss of balance and facial drooping – Plaintiff was escorted out of his friend's residence and entered Plaintiff's vehicle; Plaintiff's departure into his vehicle was observed by a private security guard at the location. [*Id*. at ¶ 34] The security guard called 911 and reported "he thought Mickey was extremely intoxicated and that both alcohol and drugs may have been involved [and that Plaintiff] was stumbling, could

---

[1] Certification Pursuant to D.C.COLO.LCivR 7.1(a): Undersigned counsel conferred with Plaintiff's counsel, Aaron Slade, Esq., by telephone on August 29, 2025. Mr. Slade indicated Plaintiff opposes this Motion to Dismiss and the relief sought.

1

barely walk, his pants were down, that he urinated on himself, and that he 'had stuff coming from his mouth.'" [*Id.* at ¶¶ 38-39]

Officer Bourdon arrived on the scene at approximately 11:08 and approached the reporting security guard and Plaintiff, who was seated in his car with the engine running. [Doc. 51, ¶¶ 42, 46] Plaintiff reported to Officer Bourdon that he had consumed alcohol and used marijuana that evening. [*Id.* at ¶¶ 56-57] Based upon Plaintiff's symptoms, and the information received from Plaintiff and the 911 call, Officer Bourdon placed Plaintiff into custody for DUI. [*Id.* at ¶¶ 67, 87] At approximately 11:30 P.M., Officer Bourdon arrived at the fire station for paramedics to evaluate and draw blood for a DUI investigation. [*Id.* at ¶¶ 101, 116] Officer Bourdon contacted her supervisor, informing them of Plaintiff's symptoms and that she would be transporting him to the hospital. [*Id.* at ¶ 127] Plaintiff spoke with the paramedics, and his symptoms were even more apparent in the light of the fire station. [*Id.* at ¶¶ 113, 120, 124-25] The paramedics did not identify Plaintiff as a patient in immediate distress or experiencing a severe medical crisis. Officer Bourdon then took him to the hospital, arriving at approximately 12:07 A.M. [*Id.* at ¶ 155]

On November 22, 2024, Plaintiff filed his initial Complaint asserting one claim for "False Arrest" under 42 U.S.C. § 1983 against Officer Bourdon. [Doc. 1, p. 1] The Court ordered Plaintiff to file an Amended Complaint complying with Rule 8. [Doc. 5] Plaintiff filed an Amended Complaint on January 27, 2025 against Officer Bourdon and the City of Lakewood again asserting one claim for "False Arrest." [Doc. 9, p. 1-2] Plaintiff was ordered to file a Second Amended Complaint because his filing was still not compliant with Rule 8. [Doc. 10] On March 31, 2025, Plaintiff filed his Second Amended Complaint alleging Officer Bourdon acted with deliberate indifference in violation of the Fourteenth

2

Amendment and C.R.S. § 13-21-131, and that the City violated Plaintiff's rights protected by Title II of the Americans with Disabilities Act ("ADA") under 42 U.S.C. § 12132 and the Colorado Anti-Discrimination Act ("CADA") under C.R.S. § 24-34-802. [Doc. 14, p. 24-34]. On August 19, 2025, Plaintiff filed a Third Amended Complaint following the Court's granting of Plaintiff's Motion to Amend. [Doc. 51] Defendants move to dismiss all claims for failure to comply with the applicable statute of limitations and failure to state a claim upon which relief can be granted, including qualified immunity to the extent Plaintiff brings a claim under the U.S. Constitution against Officer Bourdon in her individual capacity.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007)). All factual allegations pled in the complaint are accepted as true and are construed in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Romero v. Weld Cnty Sheriff's Office,* No. 18-cv-02575-RM-NRN, 2021 U.S. Dist. LEXIS 2672244, *7 (D.Colo. March 12, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570)). "Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* "A plaintiff must provide more than "labels and conclusions," and the "factual allegations must be enough to raise a right to relief above the speculative

3

level." *Twombly*, 550 U.S. at 555. Under *Iqbal*, the court first identifies the allegations that are not assumed to be true and then considers whether "they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 679-681.

## **ARGUMENT**

**I.    Plaintiff's claims fall outside the applicable statute of limitations.**

A statute of limitations defense may be resolved on a Rule 12(b) motion when the complaint itself shows the claim is time-barred. *Kolak v. Backerville*, 2025 U.S. App. LEXIS 10247, *4 (10th Cir. 2025) (citing *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)). The statute of limitations for § 1983 actions in Colorado is two years from accrual, determined by reference to state law. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); C.R.S. § 13-80-102(g). A § 1983 action accrues when the facts supporting the claim are or should be apparent. *Kolak*, 2025 U.S. App. LEXIS 10247 at *4 (citing *Fogle*, 435 F.3d at 1258). The same two-year period applies to state claims under C.R.S. § 13-21-131(5). Plaintiff's ADA and CADA claims are also governed by the most analogous state statute. *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019). Because Plaintiff's ADA and CADA claims arise from receipt of police services [Doc. 51, ¶¶ 247-268], the two-year limitation in C.R.S. § 13-80-102(1) applies.

Plaintiff's claims accrued on November 19, 2022, the date of the incident. [Doc. 51, ¶¶ 20-181]. Thus, the two-year statute of limitations expired on November 19, 2024, before the Complaint was filed on November 22, 2024. [Doc. 1]; *Kolak*, 2025 U.S. App. LEXIS 10247, *4. Plaintiff added the City and the ADA/CADA claims on March 31, 2025. [Doc. 14]. All claims are time-barred and should be dismissed.

Plaintiff argues that his claims accrued on April 25, 2023, when he reviewed body-worn camera footage with his attorney. [Doc. 51, ¶¶ 212–218]. This amendment seeks to delay accrual by pointing to his limited memory of the November 19, 2022 interaction. But even viewed in the light most favorable to Plaintiff, the complaint does not support a later accrual date. Plaintiff admits he suffered a stroke on November 19, 2022, and that nearly all interactions with Officers Bourdon and Prien occurred that same day. [*Id*. at pp. 3–21]. He further alleges that his damages resulted from Defendants' delay in transporting him to medical care on November 19, 2022. [*Id*. at pp. 24–25]. Plaintiff acknowledges he learned of the stroke when brought to the hospital by Officer Bourdon and never alleges he was unaware of his interactions with law enforcement that evening. [*Id*. at pp. 20–26]. His only claim is that he did not know the identity of the officers or details of their conduct. [*Id*. at ¶ 213].

This does not meet the applicable standard that a "plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *United States v. Kubrick*, 444 U.S. 111, 121 (1979). More importantly, a Plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 692 (10th Cir.), cert. denied, 454 U.S. 895 (1981). Tenth Circuit precedent is clear that accrual does not depend on knowing the full extent of injuries or all evidence supporting the claim. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994); *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). In *Alexander v. Oklahoma,* 382 F.3d 1206, 1211 (10th Cir. 2004), Plaintiff's brought a claim related to the Tulsa race riots of 1921 in 2003. Plaintiffs argued that their accrual date "lay dormant"

5

until a report released in 1997 revealed the extent of the City and State's culpability. *Id*. at 1215-16. The Tenth Circuit found that Plaintiff's claims were time barred as, "a plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Id*. at 1216. Likewise here, Plaintiff does not allege ignorance of police involvement in his injuries, only lack of awareness of the extent of that involvement. [Doc. 51, ¶ 213]. Under *Alexander*, Plaintiff's claims are time-barred. Plaintiff's argument that later events informed him of the alleged source of his injuries is meritless, and Plaintiff's claims accrued on November 19, 2022. Plaintiff's complaint does not allege sufficient facts to merit tolling and should be dismissed as time barred.

## II. Officer Bourdon is entitled to qualified immunity on Plaintiff's § 1983 claim.

Public employees acting in their individual capacities are presumed to be immune from liability. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990). Qualified immunity applies in "all but the most exceptional cases," *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wieber v. Porter*, 2025 U.S. App. LEXIS 4575, *12 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). To overcome qualified immunity, the plaintiff must prove: (1) defendants violated the plaintiff's constitutional or statutory right; and (2) the right was clearly established at the time of the violation in the circumstances faced by defendants. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Qualified immunity applies

6

unless a plaintiff satisfies both prongs. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009); *Valdez v. Macdonald*, 66 F.4th 796, 831 (10th Cir. 2023).

## A. Plaintiff cannot satisfy the first prong because the Third Amended Complaint fails to state a claim for deliberate indifference.

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees under the same standard for prisoners under the Eighth Amendment. *Rife v. Okla. Dept. of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017) (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002)). To support a claim for delayed access to medical care under the Fourteenth Amendment, a plaintiff must sufficiently allege that the public official was "deliberately indifferent" to the plaintiff's serious medical needs." *Id*. (citing *Martinez v. Beggs*, 563 F.3d 1082, 1088-91 (10th Cir. 2009)). "A claim of deliberate indifference includes both an objective and a subjective component." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014). "The objective prong concerns the severity of a plaintiff's need for medical care." *Rife*, 854 F.3d at 647. "A medical need is considered sufficiently serious to satisfy the objective prong if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Al-Turki*, 762 F.3d at 1192-93. "The subjective component is satisfied only if the defendant knew of an excessive risk to the plaintiff's health or safety and disregarded that risk." *Rife*, 854 F.3d at 647 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

Plaintiff alleges Officer Bourdon "had enough information to conclude that Mickey was not intoxicated, but rather experiencing a severe medical emergency . . . present[ing]

7

with textbook signs of a serious stroke, including complete paralysis of the left side of his body, slurred and delayed speech, loss of balance, inability to walk without a severe left-sided limp, left-sided facial drooping, drooling out of his mouth, and mental confusion." [Doc. 51, ¶ 98] Such symptoms are consistent with someone who was reported to 911 exhibiting intoxication, including stumbling and an inability to walk, urinating on himself, pants down, and with "stuff coming from his mouth." [*Id*. at ¶¶ 38-39] There is no diagnosis that Plaintiff was suffering a stroke or other severe medical condition. It would not be obvious to a layperson that immediate medical attention would be necessary, and Plaintiff's allegations do not satisfy the objective prong of the deliberate indifference analysis. *Al-Turki*, 762 F.3d at 1192-93.

Plaintiff also cannot satisfy the subjective prong. Plaintiff alleges that Officer Bourdon first contacted Plaintiff at 11:08 P.M. on November 19, 2022, 15 minutes after the call to 911. [Doc. 51, ¶ 42] Plaintiff makes the conclusory allegation that "throughout her contact with [Plaintiff] that night, Officer Bourdon deliberately and unreasonably disregarded the obvious and apparent signs [of] a serious medical emergency and refused to provide [] timely and appropriate medical care." [*Id*. at ¶ 44] However, Officer Bourdon is not a medical provider, and the correct analysis is whether she knew of and disregarded an excessive risk by delaying access to necessary medical treatment, which she did not. Plaintiff's allegations, taken as true, do not support any such delay or that an excessive risk of harm was disregarded.

Plaintiff alleges that Officer Bourdon delayed Plaintiff's access to emergency medical care by 22 minutes by taking him to the paramedics for a blood draw, arriving at the fire station at approximately 11:30 P.M. [*Id*. at ¶ 101] There, Plaintiff's symptoms and

8

condition were visible to the paramedics, who are qualified to assess Plaintiff's condition and order a medical response based on the symptoms presented. [*Id.*, ¶ 113] While Plaintiff alleges Officer Bourdon did not notify the paramedics of his symptoms, he also states that the symptoms were even more visible for the paramedics to observe in the "bright light of the station garage." [*Id.* at ¶¶ 113, 118] Plaintiff was able to verbalize his symptoms and medical history to the paramedics. [*Id.* at ¶¶ 120-126] There is no allegation that the paramedics identified any severe medical condition or determined that emergency medical treatment was necessary. At 11:54 P.M., having already been assessed by paramedics, Officer Bourdon transported Plaintiff to the hospital, where he received emergency care at approximately 12:07 A.M. [*Id.* at ¶ 155]

The information Officer Bourdon possessed at the time of the incident was based upon her immediate observation of Plaintiff, the information relayed through the 911 call, and the way Plaintiff presented to paramedics, where his symptoms were observed and access to emergency treatment available. At no time prior to Plaintiff's transport to the hospital was Officer Bourdon on notice that Plaintiff's condition included a brain hemorrhage nor was of a nature necessitating emergency medical treatment. [*Id.* at ¶¶ 93, 146] To satisfy the subjective prong of the deliberate indifference analysis, Officer Bourdon must have been both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference" before choosing to disregard it recklessly. *Mata*, 427 F.3d at 751-53. There is nothing to indicate that Officer Bourdon made the inference that Plaintiff was experiencing anything more than intoxication, and nothing to show that she recklessly disregarded the symptoms having made the inference that there was a severe medical condition. Officer Bourdon

9

did not delay Plaintiff from receiving medical treatment or recklessly disregarded an excessive risk to his health, and Plaintiff fails to satisfy the subjective prong of the deliberate indifference analysis.

### B. Plaintiff fails to satisfy the second prong of the qualified immunity analysis.

Even assuming *arguendo* Plaintiff met the first qualified immunity prong, he cannot show that the "violative nature of [Defendants'] particular conduct is clearly established." *Mullenix*, 577 U.S. at 12. "A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he was doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the second qualified immunity prong, a Plaintiff must show that the relevant constitutional right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985)). The analysis must be done "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The standard affords government officials "breathing room to make reasonable but mistaken judgment." *City and Cnty of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2011).

While it has been clearly established that a pre-trial detainee enjoys a right to be free from deliberately indifferent conduct of an officer, the allegations presented by Plaintiff do not portray conduct that a reasonable actor would know to be a constitutional violation. Under Plaintiff's allegations, Officer Bourdon responded to a 911 call that Plaintiff was intoxicated. Upon arrival, Officer Bourdon observed Plaintiff exhibiting symptoms consistent with intoxication. Officer Bourdon promptly brought Plaintiff to

paramedics, who did not diagnose Plaintiff as suffering a stroke or other serious medical harm. Officer Bourdon then transported Plaintiff to the hospital.

It is not clearly established that when an officer interacts with a detainee and renders aid consistent with the symptoms presented, they are deliberately indifferent to a medical condition that is more severe than their perception as a non-medical professional. Officer Bourdon brought Plaintiff to medical professionals, who took vitals, drew blood, and observed the Plaintiff's symptoms. [Doc. 51, ¶¶ 113-128] Officer Bourdon then made the decision to transport Plaintiff to the hospital. It is not clearly established that such conduct rises to the level of a constitutional violation based upon deliberate indifference.

By contrast, the law is clearly established where officers delayed seeking medical treatment after shooting a suspect (*Burke v. Glanz*, 292 F.Supp. 3d 1235, 1246-47 (D.Okla. November 9, 2017)), failed to seek medical attention for a suspect injured while being apprehended (*City of Revere v. Mass. General Hosp.*, 463 U.S. 239, 244 (1983)), or when jail officials failed to check vital signs or perform CPR for three minutes following a use of force incident leaving the plaintiff limp and unconscious (*Walton v. Gomez* (*In re Estate of Booker*), 745 F.3d 405, 435 (10th Cir. 2014)).

To the extent Plaintiff asserts a failure to perform a "gatekeeping" role when a detainee needs medical care, Officer Bourdon brought Plaintiff to paramedics, informed them of the way he presented to her, and notified her supervisor that she would transport him to the hospital. [Doc. 51, ¶127] This is sufficient to satisfy this role to the extent it may apply. See *Mata v. Saiz*, 427 F.3d 745, 759 (10th Cir. 2005). Plaintiff's allegations do not support that a reasonable officer would understand their conduct would be a constitutional violation, and Plaintiff cannot satisfy the second prong of the qualified immunity analysis.

11

### III. Plaintiff fails to state a claim for relief under C.R.S. § 13-21-131

Pursuant to C.R.S. § 13-21-131, [a] peace officer . . . who, under color of law, subjects or causes to be subjected . . . any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party." "Section 13-21-131 creates 'a cause of action against peace officers for violations of a plaintiff's civil rights' guaranteed by the Colorado Constitution." *Bullock v. Brooks*, 565 P.3d 1091, 1096 (Colo. App. 2025) (quoting *Puerta v. Newman*, 542 P.3d 693 (Colo. App. 2023)). In interpreting § 13-21-131 in a context of a state claim under the Colorado Constitution, "[federal] courts will rely on the well-developed body of federal § 1983 caselaw." *Romero*, 2021 U.S. Dist. LEXIS 267224 at *27-28; *Woodall v. Godfrey*, 553 P.3d 249, 256 (Colo. App. 2024). However, the qualified immunity in § 1983 claims and immunities under the Colorado Governmental Immunity Act are not available for claims brought under the statute. C.R.S. § 13-21-131(2)(a), (b); *Bullock*, 565 P.3d at 1096-97.

Here, Plaintiff was reported to be "extremely intoxicated [and] stumbling," exhibiting difficulty walking, and having urinated on himself. [Doc. 51, ¶ 38-39] There is no diagnosis of stroke or other severe medical condition, and the symptoms presented to Officer Bourdon were consistent with intoxication. This is insufficient to satisfy the objective prong. *Al-Turki*, 762 F.3d at 1192-93. Under the subjective prong, Plaintiff's allegations do not establish Officer Bourdon's awareness of facts supporting an inference that Plaintiff was experiencing a stroke; further, the facts do not establish that she drew such an inference *and* recklessly disregarded the risk. *Mata*, 427 F.3d at 751. Officer Bourdon responded to a report of an intoxicated individual and observed behaviors

12

consistent with intoxication. [Doc. 51, ¶¶ 39, 42] Officer Bourdon transported Plaintiff to paramedics who could have identified a need for treatment. [*Id*. at ¶101] Any symptoms Plaintiff exhibited were readily visible to the paramedics [*Id*. at ¶¶ 113, 118, 120-126] Officer Bourdon then transported Plaintiff to the hospital. [*Id*. at ¶ 145] The information Officer Bourdon received and the symptoms Plaintiff presented were not sufficient to support an inference that Plaintiff was experiencing a stroke. And Officer Bourdon's alleged conduct does not support that she made the inference and recklessly disregarded the risk. The allegations do not support a constitutional violation, and the Court should decline supplemental jurisdiction over Plaintiff's claim. 28 U.S.C.S. § 1367(c)(3).

### IV.     Plaintiff fails to state a claim under either the ADA or CADA.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Hoid v. Boulder Cnty. Sheriff's Office*, 2024 U.S. Dist. LEXIS 156482, *12-13 (D.Colo. August 7, 2024) (citing 42 U.S.C. § 12132)." To state a claim under Title II of the ADA, a plaintiff must allege that "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Tivis v. City of Colo. Springs*, 2020 U.S. Dist. LEXIS 42054, *17-18 (D.Colo. March 11, 2020) (citing *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)). The disability must have been a "determining factor in the decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). CADA requires

13

substantially similar practices by a public entity and is interpreted consistently with the ADA. *Stalder v. Colo. Mesa Univ.*, 2024 COA 29, 551 P.3d 679, 683 (Colo. App. 2024).

### A. Plaintiff fails to state a claim under the ADA as Plaintiff does not demonstrate he had a disability or was denied services.

The ADA requires that a plaintiff demonstrate that their disability is "'a physical or mental impairment that substantially limits one or more of the major life activities' of an individual." *Robertson*, 500 F.3d at 1193 (quoting 42 U.S.C. § 12102(2)(A)). Further, an individual cannot just rely on a medical diagnosis but must demonstrate that the extent of the limitations caused by the disability is substantial. *Id*.

Here, Plaintiff's demonstration of the limitations caused by his disability is only seen in conclusory statements and allegations. Plaintiff states that his inability to walk, sit comfortably in a patrol car, and button his pants were demonstrations of a disability that should have been clear to Officer Bourdon. [Doc. 51, ¶¶ 249-251] However, Plaintiff admits that his symptoms worsened during the interaction with Officer Bourdon, and ignores that trained paramedics evaluated Plaintiff and similarly did not recognize these alleged "textbook stroke symptoms." [*Id*. at ¶¶ 115-141] Again, many of Plaintiff's symptoms closely mirror symptoms of intoxication, and Plaintiff admitted to ingesting alcohol and marijuana when he was initially contacted by Officer Bourdon. [*Id*. at ¶¶ 56-57].

Most importantly, Plaintiff actively denies that he had any disability when questioned by law enforcement. [*Id*. at ¶¶ 70-71, 104] The reason Plaintiff actively denied that he had any form of disability was because Plaintiff did not have a disability that was either known to him or evident to anyone at the time of Plaintiff's interactions with Officer

14

Bourdon. The Defendants were not on notice of Plaintiff's alleged disability claim and his ADA claim should be dismissed as meritless.

Similarly, Plaintiff is required to demonstrate that he was denied services by a public entity "by reason of a disability." *Robertson*, 500 F.3d at 1193. Plaintiff claims he was denied the services of "protection and service, arrests, post arrest transportation, and facilitating adequate access to medical care." [Doc. 51, ¶ 248] Plaintiff alleges that when Officer Bourdon did not button Plaintiff's pants, forced Plaintiff to walk, forced plaintiff into the back of her patrol vehicle, and didn't remove the handcuffs from plaintiff's wrists, that was somehow a denial of services from the Lakewood Police Department. [*Id.*, ¶¶ 251-252] Plaintiff was provided with arrest services and brought to paramedics and then hospital staff. [*Id.* at ¶¶ 42, 101, 155] The allegations do not show that Plaintiff requested services he was denied, nor did Plaintiff request accommodations related to a disability. Beyond making conclusory statements clearly designed to elicit sympathy or an emotional response, Plaintiff never clearly delineates services Plaintiff was denied. Plaintiff also fails to allege the purported denial of services was by reason of disability, and his claim should be dismissed.

**B. Plaintiff's CADA claim fails for the same reasons his ADA claim fails.**

Plaintiff's claims under CADA are duplicative of Plaintiff's ADA claims. [Doc. 51, ¶¶ 245-270] CADA is "substantially equivalent" to the ADA and, whenever possible, CADA should be interpreted consistently with the ADA. *Stalder*, 551 P.3d at 683 (*quoting Tesmer v. Colo. High Sch. Activities Ass'n*, 140 P.3d 249, 253 (Colo. App. 2006)) As such, Defendants incorporate all arguments made regarding dismissal of Plaintiff's ADA claim

15

and apply them to Plaintiff's CADA claim, which should similarly be dismissed, and the Court decline to exercise supplemental jurisdiction. 28 U.S.C.S. § 1367(c)(3).

## CONCLUSION

For the reasons stated herein, this Court should dismiss all claims against all Defendants.

Respectfully submitted on September 2, 2025

>  /s/ Robert Huss
>  Senior Assistant City Attorney
>  480 S. Allison Parkway
>  Lakewood, CO 80226
>  Telephone: (303) 987-7456
>  Email: rhuss@lakewoodco.org

## CERTIFICATE OF SERVICE

I certify that I electronically served on September 2, 2025 **DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT (DOC. 51, filed August 19, 2025) PURSUANT TO Fed. R. Civ. P. 12(b)(6)** upon all parties herein on through the electronic filing system.

>  /s/ Robert Huss