IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-03245-CNS-NRN

MICKEY WALKER,

Plaintiff,

v.

HALEY BOURDON, in her individual capacity and
CITY OF LAKEWOOD, COLORADO,

Defendants.

---

**ORDER**

---

Before the Court is Defendants' fully briefed Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g.,* ECF No. 56. For the following reasons, the Court DENIES Defendants' motion. In doing so, the Court presumes familiarity with the Third Amended Complaint's (the operative complaint's) allegations, *see* ECF No. 51, and the governing legal standards, *see, e.g., Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014).

## I. ANALYSIS

Defendants advance several dismissal arguments. The Court considers and rejects them in turn below.

### A. Statute of Limitations

Defendants argue that Plaintiff's claims are time-barred. The Court disagrees.

Plaintiff filed his initial complaint on November 22, 2024, bringing one claim for "false arrest" under 42 U.S.C. § 1983. *See generally* ECF No. 1.[1] In the operative complaint, Plaintiff alleges that the events giving rise to his lawsuit occurred on November 19, 2022, *see* ECF No. 51 at 1, and brings claims for deliberate indifference, discrimination under the ADA, and discrimination under Colorado's Anti-Discrimination Act (CADA), *see generally id.*

Regarding § 1983 claims, the statute of limitations for such claims in Colorado is two years. *See, e.g.*, *Dunlap v. Raemisch*, No. 13–cv–03117–REB–CBS, 2015 WL 1086510, at *3 (D. Colo. Mar. 9, 2015) ("The statute of limitations applicable to claims brought pursuant to § 1983 is two years." (citing C.R.S. § 13–80–102(g)); *Landon v. Lowery*, No. 24–cv–00172–LTB–SBP, 2024 WL 6475485, at *2 (D. Colo. Apr. 12, 2024), *report and recommendation adopted*, No. 24–cv–00172–LTB–SBP, 2024 WL 6475479 (D. Colo. May 6, 2024) ("The applicable statute of limitations for a § 1983 claim in Colorado is two years." (citing *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993)). "Although state law determines the applicable statute of limitations period, federal law governs the particular point in time at which a claim accrues." *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006) (citation modified); *Landon*, 2024 WL 6475485, at *2. And under federal law, a § 1983 claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kripp*, 466 F.3d at 1175 (citation modified); *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005). Assertion of a statute of limitations

[1] The Court observes that Plaintiff, then proceeding *pro se*, signed his initial complaint on "11-21-2024." *Id.* at 5. Whether he filed the initial complaint on November 21 or 22, 2024, is immaterial in the Court's analysis of Defendants' argument that his claims are time-barred.

defense is an affirmative defense, *see, e.g.,* Fed. R. Civ. P. 8(c)(1), and a court will dismiss based on this defense "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (citation modified).

"An accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *Herrera v. City of Espanola*, 32 F.4th 980, 990 n.5 (10th Cir. 2022) (citation modified). Thus, because Plaintiff brought a claim for deliberate indifference, the Court's analysis turns to the elements of such a claim: whether Plaintiff alleged a substantial risk of harm—the *objective* component—and whether Defendant Bourdon acted with deliberate indifference by disregarding the known risk of harm—the *subjective* component. *See, e.g., Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1159 (10th Cir. 2026) (explaining *objective* and *subjective* components of deliberate indifference claim).

Defendants argue that Plaintiff's claim accrued on November 19, 2022—the date that, on the face of the operative complaint, Plaintiff suffered the injury that forms the basis of this lawsuit. *See* ECF No. 51 at 1 ("Mickey Walker experienced a life-threatening medical emergency when he suffered a severe hemorrhagic stroke on the evening of November 19, 2022."); ECF No. 58 at 2. Thus, according to Defendants, the statute of limitations period for Plaintiff's § 1983 claim expired on November 19, 2024—two years following the date that Plaintiff suffered this injury. *See* ECF No. 52 at 4. Therefore, according to Defendants, because Plaintiff filed the initial complaint—at the earliest—on November 21, 2024, his claim falls outside the statute of limitations period.

But, reading the operative complaint's allegations in their entirety, and drawing all inferences from them in Plaintiff's favor, his claim did not accrue on November 19, 2022. Instead, the Court agrees with Plaintiff that his claim accrued in April 2023. Specifically, Plaintiff alleges and argues that his claim did not accrue until April 25, 2023, the date that he was "first provided" access to the body-worn camera footage. ECF No. 51 at ¶ 215. *See also* ECF No. 56 at 3 (arguing claims accrued on April 25, 2023, because Plaintiff "did not realize all of the incident involving Defendants because of his stroke until he viewed the body worn camera footage on April 25, 2023"). And while claims tend to accrue when a plaintiff "kn[ew] or ha[d] reason to know of the injury which is the basis of this action," *Price*, 420 F.3d at 1162 (citation modified), given that Plaintiff brings a claim for deliberate indifference the Court's analysis looks beyond the simple fact that Plaintiff alleges that he suffered a stroke on November 19, 2022. The Court must also look to allegations that attend Defendant Bourdon's alleged deliberate indifference to Plaintiff's severe medical needs. *See Bauer v. City & Cnty. of Denver*, 642 F. App'x 920, 924 (10th Cir. 2016); *Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1160 (10th Cir. 2026) ("[Plaintiff's] alleged claims did not accrue whenever she incurred an injury. Nor did her claims accrue whenever she became aware of her injuries. Instead, her claims accrued when she knew or reasonably could have known that a) her injuries were objectively and sufficiently serious and b) the defendants acted with the requisite subjective state of mind, which is deliberate indifference."); *id.* ("Critically, however, the term injury for accrual purposes does not just mean a medical injury.").

Turning to the components of a *deliberate indifference* claim, it is clear from the face of the operative complaint that Plaintiff satisfies the *objective* component—the operative complaint pleads up and down the clear and severe risk of harm that his stroke posed. *See, e.g.,* ECF No. 51 at ¶ 28. But for *accrual* purposes, the Court asks whether Plaintiff was *aware* that he was experiencing such a risk of harm. Drawing all inferences from the operative complaint's allegations in Plaintiff's favor, he alleges that he lacked such knowledge of his own injury on the night of November 19, 2022. *See, e.g.* ECF No. 51 ¶ 37 ("Mickey did not have the capacity to drive because of his stroke. However, the confusion caused by the stroke *prevented him from understanding his incapacity or what was happening to him*." (citation modified)). Accordingly, and contrary to Defendants' argument, Plaintiff lacked the *knowledge* that he was suffering a substantial risk of harm on the night of November 19, 2022, even if Plaintiff alleges that he did suffer a stroke that night. *See Vasquez-Garcia*, 172 F.4th at 1160 ("Critically, however, the term injury for accrual purposes does not just mean a medical injury.").

But even if Plaintiff had such knowledge to satisfy the *objective* component on the night of November 19, 2022, in order to successfully assert their statute of limitations defense, Defendants must also show that he knew, or had reason to know, that Officer Bourdon was deliberately indifference to his medical needs that night. *See id.* (observing that a plaintiff's deliberate indifference claim accrues when the plaintiff "knew or reasonably could have known that a) [the plaintiff's] injuries were objectively and sufficiently serious *and* b) the defendants acted with the requisite subjective state of mind, which is deliberate indifference" (citation modified)); *id.* at 1161 (concluding that "even if"

the plaintiff "knew or should have known that she faced an objectively and sufficiently serious risk to her health, her complaint plausibly alleges that she *still did not have and could not have had knowledge of defendants' state of mind* until after she was released from prison and learned that her health had rapidly deteriorated to a nearly untreatable point" (emphasis added)); *id.* at 1162 ("Even if the defendants here had argued that [the plaintiff] had alleged knowledge of pain severe enough to satisfy the objective prong, however, that would still leave open the question of whether [she] had alleged knowledge of the defendants' deliberate indifference." (citation modified)).

And to this point regarding the *subjective* component, there are "no facts alleged in the [operative] complaint that support the inference that [Plaintiff] knew or reasonably should have known the subjective component of h[is] deliberate indifference claim outside the statute of limitations period," particularly where there is "nothing in the [operative] complaint about what [Plaintiff] knew and when [he] knew it." *Vasquez-Garcia*, 172 F.4th at 1160. To the contrary: the operative complaint alleges that Plaintiff *lacked* this knowledge—even lacked the *capacity* to understand what was going on—due to the severe nature of his stroke symptoms. *See, e.g.,* ECF No. 51 at ¶ 104 ("Officer Prien asked Mickey why he was drooling all over himself, if he was suffering a medical emergency, and if he needed to see a doctor. Mickey did his best to answer his questions despite the pain *and confusion* he was experiencing as a result of the stroke. As such, Mickey was able to reply feebly that *he did not know what was happening to him* and that he had a headache." (emphases added)); *id.* at ¶ 37 ("Mickey did not have the capacity

to drive because of his stroke. However, the confusion caused by the stroke *prevented him from understanding his incapacity or what was happening to him*." (citation modified)).

Indeed, it is entirely reasonable to infer from the operative complaint's allegations—and recall the Court *must* draw such inferences in Plaintiff's favor in this procedural posture—that Plaintiff lacked such knowledge, where, for instance, he did not even know where he was at the time the officers first arrived. *See id.* at ¶¶ 50–51 (alleging that Plaintiff stated he was in "Arvada" and that "Officer Bourdon corrected Mickey and told him that he was in fact in Lakewood, not Arvada"). Moreover, even though the operative complaint alleges that medical professionals determined Plaintiff had a severe stroke, there are no allegations that these professionals communicated this fact to Plaintiff and that he understood, or had the capacity to understand, what was happening to him. Rather, the operative complaint alleges that even after Plaintiff's emergency surgery that he "continued to say things that did not make sense, and *had cognitive problems*," *id.* at ¶ 195 (emphasis added), as well as that Plaintiff "*did not have the insight to understand his condition*," *id.* at ¶ 196 (emphases added). *See also Benavidez v. CoreCivic, Inc., et al.*, No. 1:25–cv–01147–DHU–DLM, 2026 WL 2654961, at *3 (D.N.M. Sept. 9, 2026) (concluding claims were not time barred where "there [were] no allegations that [decedent] knew or should have understood the severity of his condition").

Thus, Defendants cannot meet their burden of showing that Plaintiff had the knowledge as of the night of November 19, 2022, which could establish the elements of his deliberate indifference claim. *See Vasquez-Garcia*, 172 F.4th at 1161 ("We can make no inferences in defendants' favor about what is not said in the complaint about her

knowledge."); *id.* ("And on a motion to dismiss, when there are gaps in the plaintiff's complaint, we fill those gaps with reasonable inferences drawn in favor of the plaintiff, not against her."). Accordingly, the Court rejects their argument that Plaintiff's claims are time-barred. Reading the operative complaint's allegations in their entirety, Plaintiff did not develop such knowledge of his condition or Officer Bourdon's deliberate indifference—and thus his claim did not accrue—until he saw the body-worn camera footage on April 25, 2023. In other words, after reading the operative complaint in its entirety, his *constitutional* injury—not merely his medical stroke—was not "known or knowable until after" Plaintiff saw the body-worn camera footage. *Vasquez-Garcia*, 172 F.4th at 1162; *id.* at 1160 ("The facts that tie this medical injury to a *legal* harm must also be known or knowable.").

Because the Court concludes that Plaintiff's claim is not time barred, the Court need not address the parties' remaining *timeliness* arguments, including Plaintiff's argument that any statute of limitations should be equitably tolled. *See* ECF No. 56 at 6. Because Plaintiff's original complaint was timely, and in light of this case's procedural history as set forth in Plaintiff's response brief, the Court agrees with Plaintiff that his additional claims relate back to the claim he asserted in the original complaint, including his claims against the City of Lakewood. *See* ECF No. 56 at 9–11; Fed. R. Civ. P. 15(c). The Court's conclusion is bolstered by a reading of the initial complaint, which sought relief against the "Lakewood Police Department," not only Defendant Bourdon, underscoring that the City of Lakewood knew or should have known it would be a defendant in this case—a fact confirmed by the allegations in the first amended complaint,

which explicitly names the City of Lakewood as a defendant, and underscores that the City of Lakewood will suffer no prejudice by being a defendant in this case. *See* ECF No. 9 at 1; *Genesee Cnty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1164–65 (D.N.M. 2011). Furthermore, the allegations in the operative complaint emerge from the same events set forth in the original complaint, which alleges that Defendant Bourdon and the Lakewood Police Department needed "advanced basic medical training." ECF No. 1 at 5. *See also Hamilton v. Farmer Ins. Grp*., No. 14–cv–1211–WJM–MJW, 2014 WL 6617185, at *2 (D. Colo. Nov. 21, 2014); *Kole v. Smith*, No. 14–cv–01435–WJM–KLM, 2015 WL 5026194, at *9 (D. Colo. Aug. 26, 2015).

**B. Plausibility**

The Court turns now to Defendants' assertion of qualified immunity as to Plaintiff's § 1983 claim, and their *plausibility* arguments as to Plaintiff's remaining claims. *See, e.g.,* ECF No. 52 at 6. Explained below, Officer Bourdon is not entitled to qualified immunity at this stage on Plaintiff's § 1983 claim, and Plaintiff's claims are plausible.

**1. Qualified Immunity**

Plaintiff has met his burden of showing that Officer Bourdon is not entitled to qualified immunity. *See, e.g., Wilson v. Stoltenberg*, 182 F.4th 903, 910–11 (10th Cir. 2026) (explaining that dismissal motion based on qualified immunity imposes on the plaintiff the burden to show that "a constitutional violation occurred" and that "the constitutional right was clearly established at the time of the alleged violation" (citation modified)); *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019).

*First,* as for whether Plaintiff has met his *constitutional violation* burden, he has. Recall his § 1983 deliberate indifference claim requires satisfaction of *objective* and *subjective* components. *See Vasquez-Garcia*, 172 F.4th at 1159. Regarding the *objective* component, as discussed above, Plaintiff has plausibly alleged that his medical need was sufficiently serious. The risk that he faced—and the harm he allegedly suffered prior to the diagnosis of his stroke—was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023). In other words, not only was the alleged harm—having a debilitating stroke—sufficiently serious, but so too were the alleged symptoms displayed to Officer Bourdon throughout the evening of November 19, 2022. *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). Defendants' contrary argument fails to persuade, given the well-pleaded allegations in the operative complaint. *Cf.* ECF No. 52 at 8 (arguing that it "would not be obvious to a layperson that immediate medical attention would be necessary" while in the same paragraph acknowledging the operative complaint alleges that Plaintiff's symptoms included "stumbling and an *inability* to walk, *urinating on himself*, pants down, and with 'stuff coming from his mouth'" (citing ECF No. 51 at ¶¶ 38–39) (emphasis added)). Indeed, the Tenth Circuit has—sensibly and uncontroversially—acknowledged that comparable strokes, and resultant debilitations, satisfy the *objective* component. *See Foreman v. Elam*, 796 F. App'x 529, 531 (10th Cir. 2019). *See also Davis v. Kayira*, 938 F.3d 910, 914 (7th Cir. 2019) ("Everyone agrees that [the prisoner's] stroke was an objectively serious medical condition.").

As for whether Plaintiff met his *subjective* component burden, he has pleaded sufficient facts that show he has met this burden. “Deliberate indifference”—the governing state of mind for Plaintiff’s claim—means “the official knows of and disregards an excessive risk to [a plaintiff’s] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1262–63 (10th Cir. 2022). Yet where “a risk is obvious so that a reasonable man would realize it, we might well infer that the defendant did in fact realize it.” *Id.* at 1263 (citation modified). Further, an individual “may satisfy the subjective component by showing that defendants’ delay in providing medical treatment caused either unnecessary pain or a worsening of her condition.” *Mata*, 427 at 755 (10th Cir. 2005). *See also Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (“An official disregards risk when he fails to take reasonable measures to abate the risk.”). “Even a brief delay may be unconstitutional.” *Mata*, 427 F.3d at 755 (citation modified).

Defendants argue that Plaintiff cannot satisfy the *subjective* prong because his allegations are conclusory, *see* ECF No. 52 at 8, and that Officer Bourdon had “no notice” that Plaintiff’s “condition included a brain hemorrhage,” *id.* at 9. Therefore, “[t]here is nothing to indicate that Officer Bourdon made the inference that Plaintiff was experiencing” a life-threatening stroke, as well as that there is “nothing to show that she recklessly disregarded the symptoms having made the inference that there was a severe medical condition,” *id.*

This is wrong. As Plaintiff observes, the operative complaint presents numerous well-pleaded factual allegations to the contrary. *See, e.g.,* ECF No. 56 at 14 (collecting allegations from operative complaint); ECF No. 51 at ¶ 44 ("[T]hroughout her contact with Mickey that night, Officer Bourdon deliberately and unreasonably disregarded the obvious and apparent signs that Mickey was suffering a serious medical emergency . . . ."); *id*. at ¶ 262 ("The City of Lakewood knew and had notice of Mickey's disability and his need for reasonable modifications because Officers Bourdon and Prien *observed the textbook stroke symptoms* that Mickey exhibited . . . ." (emphasis added)).

Accordingly, the operative complaint has sufficiently alleged that Plaintiff's medical condition was "a risk [that was] obvious, so that a reasonable man would realize it," and thus that it is appropriate to "infer that [Officer Bourdon] did in fact realize it." *Est. of Beauford*, 35 F.4th at 1263 (citation modified). And the operative complaint alleges plainly that Officer Bourdon's "delay in in providing medical treatment caused [both] unnecessary pain [and] a worsening of [Plaintiff's] condition." *Mata*, 427 F.3d at 755. This further demonstrates that Officer Bourdon disregarded the risk to Plaintiff's health by failing to "take *reasonable measures* to abate it," *Lucas*, 58 F.4th at 1137 (emphasis added), given that—as alleged—Officer Bourdon did nothing more than take Plaintiff to the paramedics for a blood draw, rather than seek prompt medical care for a risk that any reasonable person would realize was obviously serious. *See Est. of Beauford*, 35 F.4th at 1263; *Prince v. Sheriff of Carter Cnty*., 28 F.4th 1033, 1046 (10th Cir. 2022) ("[V]iewing the evidence in the light most favorable to the plaintiff, as we must, the record reflects that [a defendant] both knew of and *disregarded a serious risk* to [the decedent's] health."

(emphasis added)). And although Plaintiff lacked the requisite awareness of his condition from an *accrual* perspective, he nonetheless "self-report[ed]" that he had extreme symptoms, which "present[ed] a risk of harm that would be obvious to a reasonable person." *Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848, 859 (10th Cir. 2021) (citation modified).[2]

Accordingly, Plaintiff has alleged facts establishing both the *objective* and *subjective* components for deliberate indifference, and therefore has sufficiently alleged that he suffered a constitutional violation.

*Second*, the Court asks whether this constitutional right was "clearly established" at the time. *Wilson*, 182 F.4th at 910–11. While the Court cannot define such a right at a high level of generality, *see, e.g., id.* at 912, even 'general statements of the law' can suffice to clearly establish a right if they 'giv[e] fair and clear warning' that the particular conduct at issue is unconstitutional," *id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Plaintiff has met his *clearly established* burden by offering cases that involve "materially similar conduct" and apply with "obvious clarity" to the conduct at issue in the operative complaint. *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017). Turn to *McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019), cited by Plaintiff in his response brief. *See* ECF No. 56 at 20. There, the plaintiff repeatedly warned officers of a prior

[2] Plaintiff passingly urges application of an *objective reasonableness* standard in the Court's *constitutional violation* analysis. *See* ECF No. 56 at 12. However, the case upon which this argument relies, *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015), distinguishably concerned excessive force claims, *see id.* (acknowledging "our view that an objective standard is appropriate in the context of excessive force claims"). Plaintiff acknowledges as much. *See* ECF No. 56 at 13. Thus, the Court declines to apply the standard set forth in *Kingsley*, instead analyzing Plaintiff's claims under a *deliberative indifference* framework, consistent with Tenth Circuit cases cited above.

shoulder injury, and complained that—after being "tossed about the back of the patrol car when handcuffed but otherwise unrestrained"—the plaintiff complained to an officer that he was in "'excruciating' pain from that injury." *Id.* at 1293. *See also id.* ("[The plaintiff] repeatedly told the officer that he was in excruciating pain."). And the plaintiff's complaints of pain were "corroborat[ed]" by visible signs of pain, including the facts that the plaintiff's "wrists turned purple" and that he "was unable to stand up straight when the officer ordered him to do so." *Id.*

*McCowan* premised its *clearly established* analysis in part on *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000), where the plaintiff "complained repeatedly of 'crushing' chest pain, difficulty breathing, sweating, and vomiting during the course of several days before prison officials sent him to the hospital where it was discovered that he had suffered a major heart attack." *McCowan*, 945 F.3d at 1293 (citing and quoting *Sealock*, 218 F.3d at 1209–12). *Sealock*, for *McCowan*, was instructive because it "len[t] some support" to the plaintiff's content that an officer's "denying [the plaintiff] medical care caused him 'excruciating pain' for several hours." *McCowen*, 945 F.3d at 1293. *See also Sealock*, 218 F.3d at 1210 ("[The plaintiff] presented evidence that he suffered from severe chest pain which he reasonably believed was caused by a heart attack. The pain and suffering imposed by [the] failure to get him treatment lasted several hours.").

*McCowan* also relied on *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002). There, as succinctly summarized by *McCowan*, the plaintiff was arrested and told the arresting officer that he suffered from obsessive compulsive disorder, "which can cause panic attacks." *McCowan*, 945 F.3d at 1292 (citing *Olsen*, 312 F.3d at 1310). The plaintiff

in *Olsen* twice told the officer that he was suffering a panic attack, but the officer ignored him. *See Olsen*, 312 F.3d at 1310, 1317. In analyzing the deliberate indifference *subjective* prong, *Olsen* concluded that the plaintiff met his burden under this prong because the plaintiff's "allegation that he twice told [an officer] that he was having a panic attack, coupled with [the officer's] admission that [the plaintiff] mentioned prior health problems, together signify that [the officer] *may have known of*—and disregarded—an excessive risk to [the plaintiff's] health. *Olsen*, 312 F.3d at 1317 (original emphasis).

*McCowan*, *Sealock*, and *Olsen*—all of which were decided prior to Plaintiff's alleged injury in November 2022, and thus can serve as sources for the Court's consideration in its *clearly established* analysis—clearly establish that an officer cannot deprive a plaintiff "of medical care needed for a serious medical need," *McCowan*, 945 F.3d at 1293, where the officer is on notice that the plaintiff is experiencing excruciating pain or a medical emergency, *see id. See also Sealock*, 218 F.3d at 1210–11 (concluding that plaintiff met the *subjective component* burden where there was evidence that an officer "was informed that [the plaintiff] might be having a heart attack, and that he was present when [the plaintiff] displayed symptoms consistent with a heart attack," and where the officer "allegedly refused to drive [the plaintiff] to the hospital").

To be sure, there are certain factual distinctions among these cases—e.g., that Plaintiff suffered a stroke, rather than a panic attack, as in *Olsen.* But this distinction bolsters Plaintiff's argument that the law as to his constitutional violation was clearly established. If a plaintiff's panic attack survives *deliberate indifference* scrutiny, so too must the more severe experience of a stroke. *See Sh.A. ex rel. J.A. v. Tucumcari Mun.*

*Schs.*, 321 F.3d 1285, 1287 (10th Cir. 2003) (requiring plaintiffs to demonstrate that the "unlawfulness was 'apparent' in light of established law," which "[g]enerally requires that the plaintiff demonstrate a 'substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255–56 (10th Cir.1998)); *Wilson*, 182 F.4th at 912 ("Precedent is considered on point if it involves *materially similar conduct* or *applies with obvious clarity* to the conduct at issue." (citation modified)). *McCowan* proves the point, relying on *Olsen* as clearly established law whereas *McCowan*'s plaintiff suffered an "excruciating" shoulder injury that presented with purple wrists and an inability to "stand up straight," 945 F.3d at 1293, rather a panic attack, *cf. Olsen*, 312 F.3d at 1317. *See also Wilson*, 182 F.4th at 912. Thus, these cases provide the requisite specificity—which is to say, they do not operate at too high a level of generality—to establish the unlawfulness of Officer Bourdon's alleged actions, given it was clear on the night of November 19, 2022, that her "conduct was unlawful in the situation [she] confronted." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified).

Thus, any distinctions between the injuries suffered by the plaintiffs in these cases are immaterial, especially where—as in *McCowen* and *Olsen*—the operative complaint alleges facts showing that Plaintiff provided sufficient notice to the officers that he was in pain and severely debilitated. *See, e.g.,* ECF No. 51 at ¶ 63 (alleging Plaintiff "told Officer Bourdon that he 'felt a little weak'"); *id.* at ¶ 81 ("Mickey replied by asking whose hand he was grabbing, showing the officers that he had complete left-sided paralysis and no feeling at all in his left arm or hand."); *id.* at ¶ 86 ("Mickey asked if his left arm was stuck

on something because he could not feel nor move it as he tried to sit up straight."); *id.* at ¶ 132 ("Officer Prien asked Mickey if his left arm worked. In response, Mickey mumbled 'it hurts.'"). This is to say nothing of the external and obvious signs that Plaintiff was in pain and severe distress, and of which the operative complaint alleges that Officer Bourdon had actual knowledge. *See, e.g.,* ECF No. 51 at ¶ 61 (alleging that Officer Bourdon "observed [Plaintiff's] inability to balance or stand firmly"); *id.* at ¶ 65 ("Mickey's mobility impairments were so noticeable that Officer Prien stopped [him] and asked, concerned, 'Can you walk?'"); *id.* at ¶ 85 ("The officers shined their flashlight on Mickey's face and could see that the left side of his face was drooping."); *id.* at ¶ 94 ("When Officer Bourdon returned to the patrol car, Officer Prien immediately drew Officer Bourdon's attention to how much Mickey was drooling on himself while sitting in the back seat. In response, Officer Bourdon said, 'I know.'"); *id.* at ¶ 98 ("Mickey presented with textbook signs of a serious stroke."); *id.* at ¶ 115 ("Officer Bourdon told one of the paramedics that Mickey was acting 'really weird' and that he kept 'spitting on himself.'"); *id.* at ¶ 127 ("Officer Bourdon called her supervisor and told him that Mickey was acting 'really weird,' had been 'grabbing for his cuff' even though there was nothing wrong with his cuffs, could not walk, and that he could not stand up on his own."); *id.* at ¶ 161 ("Officer Bourdon told the medical staff that Mickey had been presenting similarly since she first contacted him at around 11:15pm.").

For these reasons, Plaintiff has met his *clearly established* burden. *See* ECF No. 21. Defendants fail to persuade otherwise. *See, e.g.,* ECF No. 52 at 10.[3]

* * *

It is generally difficult to overcome a defendant's assertion of qualified immunity. And while the doctrine protects "all but the plainly incompetent or those who knowingly violate the law," *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021) (citation modified), some complaints do allege sufficient facts that render a defendant's conduct plainly incompetent and unlawful, *id.* This is one such complaint. Accepting the operative complaint's well-pleaded allegations as true, and construing them in their entirety, at this procedural stage Plaintiff has met his burden as to both *constitutional violation* and *clearly established* prongs. Defendants' *qualified immunity* assertion fails, and dismissal of Plaintiff's claim on this basis is denied.[4]

[3] Notably, in reply Defendants offer a concession that undermines their own arguments: "On the date of the incident, it was clearly established that an officer cannot act with deliberate indifference to a serious medical need." ECF No. 58 at 7.

[4] Because, as explained above, Plaintiff has plausibly alleged that he suffered a constitutional injury, Plaintiff's claim under C.R.S. § 13–21–131 survives Defendants' dismissal challenge as well. *Compare* ECF No. 52 at 12, *with Sholes v. City of Craig Colorado*, No. 24–cv–01664–STV, 2025 WL 1029507, at *11 (D. Colo. Apr. 7, 2025), *appeal dismissed sub nom. Sholes v. Caudell*, No. 25–1175, 2025 WL 3082264 (10th Cir. Oct. 10, 2025) ("Because of this coextensive nature of the Colorado and United States Constitutions, the Court finds that Plaintiff has plausibly alleged a state constitutional violation."); *and Weidner v. Doe*, No. 24–1145, 2025 WL 1230531, at *6 (10th Cir. Mar. 5, 2025) (unpublished). Thus, the Court rejects Defendants' invitation to decline the exercise of supplemental jurisdiction over Plaintiff's state claim. *See* ECF No. 52 at 13.

### 2. ADA and CADA Claims

Defendants argue that Plaintiffs' ADA and CADA claims are implausible and should therefore be dismissed. *See* ECF No. 52 at 13. The Court disagrees, addressing Defendants' *plausibility* arguments in turn.[5]

*First*, Plaintiff has done more than put forward "conclusory statements and allegations" regarding his disability. *Id.* at 14; *id.* ("Plaintiff fails to state a claim under the ADA as Plaintiff does not demonstrate he had a disability or was denied services."). The Court has already cited numerous allegations in the operative complaint that demonstrate Plaintiff was under severe and obvious medical duress about which Defendant Bourdon had actual knowledge, underscoring that the stroke he allegedly suffered is a disability under the ADA. *See also Burkholder v. Gates Corp*., Civil No. 09–2322–KHV, 2011 WL 124537, at *3 (D. Kan. Jan. 14, 2011) ("The stroke disabled him, as defined by the ADA, and confined him to a wheelchair."). To the extent that Defendants argue that "trained paramedics evaluated Plaintiff and similarly did not recognize these alleged 'textbook stroke symptoms,'" this argument invites drawing inferences *against* Plaintiff. *Id.* This is improper at this stage of litigation. For this same reason, the Court rejects Defendants' argument that Plaintiffs' symptoms "mirror[ed] symptoms of intoxication," and that on this basis his claims should be dismissed, as well as that Plaintiff's claim is implausible

[5] The Court notes that Plaintiff may bring an ADA claim based on his allegations regarding his arrest and detention. *See, e.g.,* ECF No. 51 at ¶ 43 (alleging that Officer Bourdon had "primary-decision makes authority over [Plaintiff], including his arrest, detention, placement, and what medical care he received"); *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999); *Trujillo v. Rio Arriba Cnty. ex rel. Rio Arriba Cnty. Sheriff's Dep't*, 319 F.R.D. 571, 611–12, 626 (D.N.M. 2016). Defendants' argument, which attend the *plausibility* of Plaintiff's ADA claim, do not challenge Plaintiff's ADA claim on the ground that the operative complaint's allegations preclude its applicability. *See also Trujillo*, 319 F.R.D. at 625 (setting forth elements of ADA claims).

because at one point Plaintiff "denied he had any disability." *Id.* Not only does this invite drawing inferences *against* Plaintiff, but is an argument plainly contradicted by the operative complaint's well-pleaded allegations. *Compare* ECF No. 51 at ¶ 179 (alleging Officer Prien stated Plaintiff "was 'not a normal DUI'"); *id.* at ¶ 44 ("[T]hroughout her contact with Mickey that night, Officer Bourdon deliberately and unreasonable disregarded the obvious and apparent signs that Mickey was suffering a serious medical emergency . . . ."); *id.* at ¶ 262 ("The City of Lakewood knew and had notice of Mickey's disability and his need for reasonable modifications because Officers Bourdon and Prien *observed the textbook stroke symptoms* that Mickey exhibited . . . ." (emphasis added)), *with* ECF No. 52 at 15 ("Defendants were not on notice of Plaintiff's alleged disability claim . . . ."). *See also Burkholder*, 2011 WL 124537, at *3; *Equal Emp. Opportunity Comm'n v. UPS Ground Freight, Inc.*, 443 F. Supp. 3d 1270, 1288 (D. Kan. 2020) ("In sum, the EEOC has demonstrated that [the individual's] stroke was an impairment as defined by the ADA."); *Trujillo*, 319 F.R.D. at 626 (concluding record established plaintiff suffered disability where "[f]urther, a reasonable jury could find that [his] impairment substantially limited his ability to walk on the night of his arrest").

At bottom, Plaintiff has pleaded that he suffered a disability, as well as that Defendants were on notice of it. *Cf.* ECF No. 52 at 15 (arguing to the contrary). Thus, this argument fails. *See also* ECF No. 56 at 16–17.

*Second*, Plaintiff has alleged facts demonstrating that he was denied services because of his disability. *Cf.* ECF No. 52 at 15. Defendants again premise this argument on inferences drawn *against* Plaintiff and the operative complaint. The Court can't draw

inferences against Plaintiff, and regardless, the operative complaint's allegations, along with all reasonable inferences drawn from them, show that Plaintiff has sufficiently alleged that he was denied services by reason of a disability for purposes of his ADA claim. *See, e.g.,* ECF No. 51 at ¶ 102 ("The two officers acted with no urgency as Mickey suffered in pain and confusion in the back of the patrol car. The officers did not immediately take Mickey out of the car to be seen by the firefighter paramedics and did not get him any medical attention.").[6] In other words, Defendants are wrong to argue that "Plaintiff never clearly delineates services Plaintiff was denied." *Id.* The operative complaint alleges that he was denied medical care for a stroke he was suffering and of which the officers had notice, meaning the need for an accommodation was "by reason" of the disability he suffered. *Id.*

Moreover, the operative complaint alleges a causal connection between his disability—suffering a stroke—and how he was arrested and detained—which, by extension, means he was denied sufficient care under the ADA. Further, even considering whether the officers had probable cause to arrest Plaintiff, *see Trujillo*, 319 F.R.D. at 627, the operative complaint sufficiently alleges that the officers lacked such probable cause.

[6] As for Defendants' argument that the operative complaint "never clearly delineated services that Plaintiff was denied" because the complaint "mak[es] conclusory statements clearly designed to elicit sympathy or an emotional response," ECF No. 52 at 15, this argument is galactically unprofessional. Defendants may challenge Plaintiff's arguments and allegations on their merits—and the Court will, of course, consider those merits-based arguments, as it has in ruling on Defendants' dismissal motion—but it demeans the profession to advance a purposeless and unsupported argument that a litigant would bring a case simply to drum up sympathy. More fundamentally, this argument runs afoul of the Court's Uniform Practice Standards. *See* CNS Uniform Civ. Practice Standard 10.1(c)(4) ("Please avoid characterizing the opposing party's actions ('counsel conveniently overlooked,' 'counsel attempts to mislead the court by stating,' etc.). Such characterizations serve no purpose and merely add to the overall amount of reading materials for a particular matter.").

*See, e.g.,* ECF No. 51 at ¶ 55 ("Officer Bourdon had no factual basis to support her suspicion that Mickey smelled like he drank a lot of alcohol that night."); *id.* at ¶ 99 (Moreover, Mickey's presentation was entirely inconsistent with a person who had consumed two shots of alcohol and smoked marijuana hours earlier."); *id.* at ¶ 171 ("One of the medical staff asked [O]fficer Bourdon if she had *actually* breath-tested Mickey as part of her investigation to confirm if he was drunk or not. Officer Bourdon said, 'no' . . . ." (emphasis added)). Particularly where, drawing all inferences in Plaintiff's favor, he was found by the officers in a stationary car, undermining the notion that he had been driving under the influence. *See id.* at ¶ 32 (alleging that Jonathan "ushered Mickey out of his apartment, hastily led Mickey to his car, and left him *sitting* in the driver seat" (emphasis added); *Id.* at ¶ 67; *id.* at 51 ¶ 179 (alleging that Officer Prien told Officer Bourdon that Plaintiff "was 'not a normal DUI'"); *id.* at ¶ 37 ("Mickey did not have the capacity to drive because of his stroke."). *See also Trujillo*, 319 F.R.D. at 629 ("[Plaintiff's] admission to drinking two beers did not, by itself, supply probable cause.").

For all of these reasons, the Court agrees with Plaintiff, *see* ECF No. 56 at 17, that he has pleaded a plausible ADA claim.[7]

## II. CONCLUSION

Consistent with the above analysis, Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 52, is DENIED. In light of the Court's ruling the Court LIFTS the stay of discovery in this case. *See also* ECF No. 62 at

[7] Because Plaintiff's ADA claim survives dismissal, so too does his CADA claim. Defendants acknowledge the claims arise and fall together. *See id.* ("Plaintiff's claims under CADA are duplicative of Plaintiff's ADA claims.").

5 (affirming magistrate judge's stay order "pending the Court's ruling on Defendants' pending dismissal motion").

DATED this 16th day of September 2026.

BY THE COURT:

____________________________________________

Charlotte N. Sweeney
United States District Judge